15393

FROST v. PROTECTIVE LIFE INS. CO.

(19 S. E. (2d), 471)

November, 1941.

*Mr. Charles W. McTeer,* of Chester, for appellant,

*Messrs. Gaston & Hamilton*, of Chester, for respondent,

March 24, 1942.

The opinion of the Court was delivered by Mr. Asso-CIATE JUSTICE FISHBURNE.

The appeal is from an order granting a motion made by the respondent for a change of venue from Chester County to Lancaster County. The motion was made pursuant to Section 426, 1932 Code, upon the ground that the convenience of witnesses and the ends of justice would be promoted by the change. The action arose, as shown by the complaint, upon a certificate of insurance on the life of Mary W. Frost under a group policy of insurance issued by respondent, Protective Life Insurance Company, to Springs Cotton Mills, of Lancaster, South Carolina.

Mary W. Frost, the insured, died on or about January 13, 1940; the amount of insurance was $500.00; and appellant, the beneficiary named in the policy, brought this ac-

tion in Chester County against the respondent to recover the face amount thereof.

Liability was disclaimed by the respondent on the ground that the insured was not an employee of Springs Cotton Mills at the time of her death, and that the insurance certificate had terminated with the termination of her employment.

The policy of insurance which constituted a part of the motion papers before the lower Court provides:

"The insurance with respect to any employee insured hereunder shall cease when active employment of any employee is terminated * * *."

"The employer shall not be authorized to receive a premium from or on behalf of any employee insured hereunder, nor to remit such premium to the company, unless such employee's name appears upon the payroll of the employer * * *.

"The date of termination of insurance with respect to any employee, as shown by the records of the employer, shall be conclusive evidence that such insurance terminated on said date, and shall release the company from all claims on account of insurance so terminated, except as to refund of unearned premium, if any."

It appears that the major issue upon the trial of this case will be the determination of the controversial question as to what date the employment of the insured ceased with the Springs Cotton Mills at Lancaster.

At the hearing of the motion on circuit, the respondent submitted affidavits of four employees of the Springs Cotton Mills who were regarded as material witnesses: F. F. Rush, superintendent of spinning at the Lancaster plant of Springs Cotton Mills, F. V. Privette, the second hand in the spinning room, and under whose direction Mary W. Frost worked; R. P. Barton, overseer, and E. L. McDow, paymaster. All of these affiants, as shown by their affidavits, made and kept a part of the records of the Springs Cotton

Mills, comprising the entire period of the insured's employment, and showing when such employment ended. In the affidavits of Mr. Barton, the overseer, and Mr. Rush, the superintendent of spinning, it is stated that it would be inconvenient for them to leave their work in Lancaster for the purpose of going to Chester and there testifying; that their absence would seriously interfere with the work of the mill and the employment of hundreds of men under them, and that the inconvenience of testifying in Court at Lancaster would be negligible.

The affidavit of Mr. McDow, the paymaster, and that of Mr. Privette, also show that it will be highly inconvenient for them to leave their work in the Lancaster mill for the purpose of going to Chester to attend the trial of this case. It may reasonably be inferred from these affidavits that the deponents are material witnesses on the issues as to the date when the employment of Mary W. Frost terminated in the mill at Lancaster. Accompanying these affidavits is one from David A. Gaston, Esq., one of the attorneys for the respondent, in which it is set forth that the evidence to be given by the named witnesses for the respondent, all of whom live at Lancaster, is vitally material, and that it would be for the convenience of witnesses and the promotion of justice for the cause to be tried at Lancaster.

Upon due notice, a motion was heard before us at the March term of Court on behalf of respondent, for an order allowing an affidavit of E. L. Skipper, general manager of the Lancaster plant of Springs Cotton Mills, to be considered as a part of the record in this case. Appellant interposed the objection that the affidavit was cumulative and irrelevant. Upon the grounds stated, we can see no valid objection to the incorporation of this affidavit in the record for appeal. However, we are content to rest our decision of the case upon the showing made before the lower Court without considering this additional affidavit.

From the counter affidavits submitted by the appellant, it is shown that he will have three witnesses who are ex-

pected to testify that the insured had ceased work at the Lancaster plant only temporarily, and that her employment there had not terminated. The appellant and these three witnesses reside at Great Falls, in Chester County, which is nearer to the town of Lancaster than to Chester. A paved highway connects Great Falls with Lancaster. In the affidavits submitted by the appellant, no claim is made on behalf of these witnesses who reside at Great Falls that it would be less convenient for them to attend Court at Lancaster than at Chester.

Motions of this character are addressed to the discretion of the lower Court, and its ruling will not be disturbed unless it appears from the facts presented that the Court in the exercise of a sound judicial discretion committed manifest legal error. *Patterson v. Charleston & W. C. Ry.,* 190 S. C., 66, 1 S. E. (2d), 920; *Roof v. Tiller,* 195 S. C., 132, 10 S. E. (2d), 333, 132 A. L. R., 500.

Judicial discretion is an elastic, relative term, and any attempt to define it is generally regarded as a difficult and dangerous undertaking. As was said in *Norris v. Clinkscales,* 47 S. C., 488, 25 S. E., 797, 801: "The term 'discretion' implies the absence of a hard and fast rule. The establishment of a clearly-defined rule would be the end of discretion."

Discussing the same subject, the Court stated in *Bishop v. Jacobs,* 108 S. C., 49, 93 S. E., 243: "It is true one judge might exercise his discretion one way, and another judge might exercise it another way, on the same state of facts. In the nature of the case, then, there must be latitude in which the judicial discretion may move * * *."

After a consideration of the record, we see no reason for disturbing the order of the lower Court. There is in the proof submitted by the movant competent and relevant evidence to sustain the judgment.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGE G. B. GREENE, ACTING ASSOCIATE JUSTICE, concur.