16632

WEBB v. SOUTHERN RY. CO. *ET AL.*

(71 S. E. (2d) 12)

*Messrs. Gedney M. Howe, Jr.,* and *Robert McC. Figg, Jr.,* of Charleston, and *C. T. Graydon,* of Columbia, *for Appellant,* cite:

452

*Messrs. Frank G. Tompkins, Jr.,* of Columbia, *and Barnwell & Whaley,* of Charleston, *for Respondents, Southern Railway Company and Southern Railway-Carolina Division,* and *N. L. Barnwell,* of Charleston, *for Respondent, Baxter L. Wells,* cite:

May 28, 1952.

BAKER, Chief Justice.

This is an action for the recovery of damages in the sum of Two Hundred and Fifty Thousand Dollars for the alleged wrongful death of Thomas W. Webb, deceased, brought by his widow, as his administratrix, for ·the benefit of herself and their two children as the sole beneficiaries entitled to recover damages for his death under Sections 411–412 of the Code of Laws of South Carolina, 1942.

The death of the plaintiff's intestate occurred as the result of injuries suffered by him in a collision between the engine of a passenger train and an automobile which he was driv-

ing, which collision occurred on or about the 27th day of November, 1947, at or about 7:40 P. M., at a point where the railroad track of the defendant Southern Railway Company, leased by it to the defendant Southern Railway-Carolina Division, crosses Main Street, or U. S. Highway No. 21, in the Town of Branchville, in Orangeburg County, South Carolina. The complaint alleges that the defendant, Baxter L. Wells, was the engineer upon the engine which was in collision with the said automobile, that he was operating said engine as the agent and servant of his co-defendants, and in the course and scope of his employment as such by them, and that the collision and the death of the plaintiff's intestate were due to and caused by joint and concurrent acts and omissions of the defendants, their agents and servants, in particulars set forth in the complaint.

The action was brought in the Court of Common Pleas for Charleston County, the county of residence of the defendant Wells, in which county the other defendants own trackage and other property, have agents and employees, and operate trains and transact business.

After serving their answers to the complaint, the defendants gave notice of a joint motion before the Honorable William H. Grimball, Resident Judge, at his chambers on Monday, January 30, 1950, to change the place of trial of the cause from Charleston County to Orangeburg County on the stated ground that the convenience of witnesses and the ends of justice will be promoted by the change, the motion to be made on the record and on affidavits attached to the notice of the motion.

The plaintiff served and filed a return to the motion opposing it, and also affidavits and a statement in support of her return.

The motion was argued on February 4, 1950, before Judge Grimball, who filed his order dated February 27, 1950, granting the motion of the defendants, and changing the place of trial of the cause to Orangeburg County.

The plaintiff gave proper and timely notice of intention to appeal to the Supreme Court from Judge Grimball's order, and thereafter perfected said appeal.

We have here the situation where the individual defendant, although a resident of the county in which the action was commenced, joins with the corporate defendants, who could have been sued in either county, in asking for a change of venue to the county in which the tragic accident occurred. Under Section 422 of the Code of Laws, 1942, the action was properly commenced in Charleston County, but Section 426, subdivision 3, of the said Code, provides that the Court may change the place of trial "When the convenience of witnesses and the ends of justice would be promoted by the change."

The broad issue presented by this appeal is whether on the factual situation as disclosed by the record, the learned Circuit Judge committed an abuse of discretion (error of law) in granting the motion for a change of venue.

As was stated in *Patterson v. Charleston & W. C. Ry Co.,* 190 S. C. 66, 1 S. E. (2d) 920, 922, "motions of this character are addressed to the discretion of the lower Court, and its ruling on such matters will not be disturbed, unless it appears from the facts presented that the Court committed a manifest abuse of a sound judicial discretion." (Citing authorities.)

The burden in the first instance was upon the respondents to make a *prima facie* showing, not only that the convenience of witnesses would be served, but also that the ends of justice would be promoted by the change. If this test was successfully met, the burden then shifted to the appellant to show that at least one of these requirements had not been sufficiently satisfied. *Patterson v. Charleston & W. C. Ry. Co., supra,* cited and quoted in *McCarty v. Bolick,* 216 S. C. 396, 58 S. E. (2d) 338. See also *Smith v. Atlantic Coast Line R. R. Co.,* 218 S. C. 481, 63 S. E. (2d) 311.

In *Utsey v. Charleston, S. & N. R. Co.,* 38 S. C. 399, 17 S. E. 141, 143, it is stated: "The very object of our jury system, in requiring jurors from the vicinage to pass upon the credibility of witnesses, is the promotion of the ends of justice." Cited in *Smith v. Atlantic Coast Line R. R. Co., supra.*

We have cited the leading cases of Patterson and Utsey for the governing law, although they differ materially factually from the instant case in that all of the witnesses in the *Utsey case* lived in Sumter County, and not in Colleton County where the action was brought; and in the *Patterson case* twelve of the defendant's sixteen witnesses lived in Laurens County, and no witness with the exception of the plaintiff, who was temporarily residing in Hampton County, lived in or near Hampton County where the action was commenced.

Attached to the motion papers of defendants-respondents for change of venue was an affidavit of Frank B. Birthright, setting forth that he was Superintendent of the Charleston Division of the defendants Southern Railway—Carolina Division—and Southern Railway Company, and in charge of the operation of all trains and other railroad operations between Charleston and Columbia, including the operation of the passenger train mentioned in the complaint herein, and of the employees of the railroad companies operating the said passenger train; that the scene of the accident complained of was the Town of Branchville, which is located more than sixty miles from the City of Charleston, the County seat of Charleston County, in which this suit was brought; that neither plaintiff's intestate nor plaintiff was a resident or citizen of Charleston County, but resided in Richland County at the time of said accident; that the accident complained of occurred at a railroad crossing over U. S. Highway No. 21, which runs through the Town of Branchville and is also known as Main Street in said Town, and that for a proper understanding and determination of the issues which may arise it would be highly ad-

visable that on the trial the jury view the crossing, its approaches and surroundings, which could not adequately be reproduced nor demonstrated by plats or photographic representations, or by verbal descriptions; that, moreover, it would definitely promote the ends of justice that the case be tried by a jury from the vicinage; that the defendants have more than a dozen necessary and material witnesses who reside in the Town of Branchville, City of Orangeburg, County of Orangeburg, and near to the County seat of Orangeburg and more convenient for the witnesses than Charleston County, viz.: R. O. Caffey, J. D. Fraylick, W. O. Myers, V. J. Dukes, James Grimes, Mrs. T. L. Pearlstine, S. D. Moss, E. J. Lackey, Miss Ruth Byrd, S. J. McCracken, D. L. Hutto, N. E. Byrd and E. R. Reeves; that ten of the foregoing witnesses are material witnesses as to the facts of the accident or to conditions existing at the crossing at the time of the accident or to pertinent events immediately preceding or following it, and that of them, R. O. Caffey is a Highway Patrolman, that S. D. Moss is a surveyor and E. J. Lackey a photographer familiar with the locality, who will prepare plats and photographs of the scene of the accident; that Miss Ruth Byrd is City Clerk, whose testimony as to the ordinances of the Town of Branchville is necessary and material; that there may be other witnesses whose names deponent has not yet been able to obtain whose testimony would be material to the case; that it would be practically impossible to obtain the presence of all of these witnesses if the case is tried in Charleston, and that it would impose inconvenience and hardship on them and add substantially to the expense of the trial if they should have to come to Charleston to attend the trial and remain there until called upon to testify.

Also attached is an affidavit from Baxter L. Wells, co-defendant of the railroad companies, in which he states that at the time of the accident he was the engineer on the passenger train mentioned in the complaint, and his affidavit then parallels the affidavit of Mr. Birthright.

Also, an affidavit from the late and lamented Nath. B. Barnwell, who was of counsel for the railroad companies involved, in which he stated that he had examined the investigation files concerning this suit and found that practically all of the material witnesses for the defendants are citizens and residents of Orangeburg County where the accident complained of occurred on or about the 27th day of November, 1947; that it would greatly be in the interest of all the defendants that the case should be tried in Orangeburg County where practically all of the witnesses reside; that the accident complained of happened at the railroad crossing over U. S. Highway No. 21, which runs through the Town of Branchville, and is also known as Main Street in said Town; that from an examination of a sketch of the locality deponent believes that it would be highly advisable in the trial that the jury should view the crossing, its approaches and surroundings, and that neither plats nor photographic representations nor verbal descriptions would as adequately indicate the conditions at the time of the accident as an actual view of the crossing; that the files submitted to him show that there are at least a dozen outside witnesses, and others active in Branchville and Orangeburg, who would be material and necessary witnesses for his clients, and that it would impose great hardship both on the defendants and these witnesses and add substantially to the expense of the trial if they should have to go to Charleston to attend the trial and remain until they are called to testify rather than that they should testify in the City of Orangeburg; that no reasonable cause exists so far as deponent is advised as to why this suit should not have been brought in Orangeburg County where the accident happened and where the witnesses reside; that both the ends of justice would be promoted and the convenience of witnesses would be served for the case to be tried by a jury of the vicinage who could view the scene of the accident and hear the testimony of witnesses of the vicinage, all of which witnesses to the accident, except certain members of the train crew, are themselves residents of Orangeburg County.

Also, a very similar affidavit by N. L. Barnwell, attorney for the defendant Baxter L. Wells.

The plaintiff made a return to the motion of defendants in which she alleges that she must necessarily rely to a great extent upon the testimony of some or all of the train crew to establish facts material to the issue in this case, particularly as to the speed of the train, the signals given, the efforts made to slow or stop the train before and after the collision, and where her husband was when the automobile which he was driving was seen by the engineer; and in addition to the said Baxter L. Wells, defendant herein, the following members of the train crew reside in Charleston County and are more conveniently available to her for witnesses in Charleston County, and are better known to the jurors in Charleston County as regards their credibility than they would be in any other county in the State: Steve Strak, the conductor; H. E. Lee, the fireman; B. C. Wurthmann, the brakeman; and J. H. Grimes, the baggage master; that the collision out of which this action arose was investigated immediately thereafter by State Highway Patrolman R. O. Caffey, a resident of Charleston, S. C., and temporarily stationed in Orangeburg, S. C., L. W. Wallace, a resident of Beaufort, S. C., and G. J. DeBruhl, a resident of Yemassee, S. C., to all of whom it is more convenient to attend court in Charleston County than in Orangeburg County, and that their testimony is very material on the issues of the case; that the morning following the said collision the same was investigated by E. H. Miller, Jr., and Donald G. Duncan, who live in Columbia, and that they find it convenient to attend court in Charleston, and their testimony is material to the issues herein; that the brother of her deceased husband, Dr. H. J. Webb of the Clemson College faculty, also went to Branchville shortly after said collision and made an extensive inquiry into the said collision, viewed the crossings in question, and can testify to the physical condition within a few days of the said collision, and he finds it convenient and not a hardship to at-

tend court in Charleston; that plaintiff has contracted with Ronald Allen Reilly, who resides in Charleston, and with Joseph Needle, who resides in Charleston, to take photographs of the scene of the collision and to make a plat thereof, respectively, and they find it inconvenient to attend court in Orangeburg County because of the nature of their business and employment; that her attorneys had gone to Branchville and were able in the time available to see Mrs. T. L. Pearlstine, N. E. Byrd, D. L. Hutto, S. J. McCracken and E. R. Reeves, witnesses named in the affidavits of the defendants on this motion, but were unable to see the other witnesses mentioned; that Mrs. T. L. Pearlstine and N. E. Byrd stated, as shown in their affidavits attached, that it was entirely convenient for them to attend court at Charleston and would not impose any hardship on them at all; that Mr. Hutto stated that while he did not wish to sign anything, he read the affidavits of Mrs. Pearlstine and Mr. Byrd and said they would also be true in his case as a day in court is a day in court, and that while Orangeburg is nearer Branchville than Charleston is, the difference in travel was not a substantial consideration and that if he is called as a witness he will attend wherever the case is tried; that S. J. McCracken stated to her attorneys that he knew nothing about the collision and was not even in Branchville when it happened and only heard about it later; that E. R. Reeves, a retail liquor dealer in Branchville, stated it was more convenient for him to attend court in Orangeburg than in Charleston because he could get back to his liquor store and open it quicker; that plaintiff is informed and believes that J. D. Fraylick, V. J. Dukes and W. C. Myers, mentioned in the affidavits filed in support of the motion, are employees of the Southern Railway Company, and that James Grimes is a retired employee of said company, and that the said defendant has ample facilities and resources to obtain their attendance at court in Charleston County as cheaply as it can in Orangeburg County, and as easily and cheaply as it can obtain the attendance in Orangeburg

County of the train crew witnesses above mentioned, who live in Charleston and whose testimony is certainly as material, if not more so; that the witness S. D. Moss is a surveyor who is apparently going to be employed to make a survey if the case is transferred to Orangeburg County, and the witness E. J. Lackey is a photographer who is apparently going to be employed to make photographs if the case is transferred to Orangeburg County; that the witness Miss Ruth Byrd is the Town Clerk of Branchville, whose attendance to prove the speed ordinance applicable to trains, and any other ordinances of the Town of Branchville, is unnecessary under Section 715 of the Code of Laws of South Carolina, 1942; that the crossing in question, as it was at the time of and immediately after the accident, can and will be clearly and amply described to the jury which tries the case, both by personal testimony, plats, and photographs taken at the time, and that photographs of it now can also be made and introduced, and it is exceedingly speculative that with such an abundance of evidence as to the conditions then, particularly of the degree of obstruction of view from trees and shrubbery at said time, nearly two and one-half years ago, that the trial Judge or the trial jury will regard a view of the crossing at the time of the trial as important; that if the case is tried in Orangeburg County the jury would have to make a round trip of more than thirty-six miles to see the crossing, and a trip to view it, if regarded as warranted by the trial Judge, could almost as conveniently be made from Charleston, considering the modern transportation facilities available for such purpose.

The return further alleges that the convenience of witnesses preponderantly favors the trial in Charleston County rather than in Orangeburg County, and that neither the convenience of witnesses nor the ends of justice will be served by changing the place of the trial of this cause.

The allegations of the return are supported by affidavits of counsel for plaintiff, and the affidavits of the parties named below in so far as the return referred to them: Don-

ald G. Duncan, E. N. Miller, Jr., Donald Allen Reilly, Joseph Needle, R. O. Caffey, L. W. Wallace, G. K. DeBruhl, N. E. Byrd, Mrs. T. L. Pearlstine, and S. J. McCracken.

Although immaterial, it may be noted that in the first portion of the return of plaintiff-appellant to the motion papers of the respondents, it is stated that the train crew will be witnesses for the plaintiff-appellant, yet later therein it is suggested that they will be witnesses in behalf of the defendants-respondents. There is, of course, the possibility that they will not be witnesses for either side to the cause.

In this case as in the *Patterson case,* there is a "silent witness," to wit, the railroad crossing in Branchville, approximately twenty miles from Orangeburg, but sixty miles from Charleston. The respondents allege in their motion papers "that for a proper understanding and determination of the issues which may arise, it would be highly advisable that on the trial, the jury view the crossing, its approaches and surroundings which could not adequately be reproduced nor demonstrated by plats or photographic representations, or by verbal descriptions." This is denied in the return of the appellant, but the appellant alleges that if it is necessary for the jury to view the crossing, they could almost as conveniently be carried from Charleston, considering the modern transportation facilities available for such purpose.

There are eleven paragraphs of the complaint devoted to a description of this crossing and the surroundings, and the "Statement" in the brief of the appellant undertakes to describe same, but being unfamiliar with the crossing and the surroundings, the writer is unable to envision it from the verbal description thereof contained in the complaint and the return of appellant on the motion. It may be that with a plat of same we could do so, but our experience with photographs of such a large area is that such photographs are of no great assistance. From the record now before us, we believe the jury would desire to see this crossing and the general surroundings for a proper understanding of the situation.

The showing made by the appellant in opposition to the motion to change the venue, as hereinabove set out, seems to us to greatly preponderate as to the convenience of material witnesses. Of course, some witnesses will be inconvenienced by having to attend court in Charleston, but by far the greater number of witnesses will be inconvenienced by attending a trial at Orangeburg. And, comparatively speaking, with the modern facilities for travel and paved highways, sixty miles is no farther than ten miles in "the horse and buggy days," and we feel sure that if the jury wishes to see this crossing, the trial Judge will permit them to do so.

In order to change the place of trial under the Section of the Code hereinabove quoted (upon which Section the respondent relies), it must appear that both the convenience of witnesses will be served and the ends of justice be promoted. We, therefore, reach the conclusion that the Court below erred as a matter of law in granting the motion of the respondents.

It follows that the order appealed from should be and is reversed.

FISHBURNE, TAYLOR and OXNER, JJ., and E. H. HENDERSON, A. A. J., concur.